IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHARLES EDWARD WILLIAMS,           §
                                   §
                                   §
                  Petitioner,      §
                                   §
v.                                 §
                                   §          CIVIL ACTION NO. H-07-2794
NATHANIEL QUARTERMAN, Director,    §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
                  Respondent.      §

## MEMORANDUM OPINION AND ORDER

Petitioner, Charles Edward Williams, a person in custody, filed a Petition for a Writ of Habeas Corpus with this court on August 30, 2007, (Docket Entry No. 1). Respondent, Nathaniel Quarterman, filed a Motion for Summary Judgment with Brief in Support (Docket Entry No. 8), to which Williams has filed a "Rebuttal" (Docket Entry No. 10). For the reasons explained below the court will grant respondent's motion for summary judgment and deny Williams's petition.

## I. Factual and Procedural Background

Petitioner was indicted in Harris County, Texas, in Cause No. 962080 for aggravated sexual assault.[1] On February 18, 2004, the state trial judge, sitting as the trier of fact, found

---

[1]Ex parte Williams, No. 67, 602-01, Indictment p. 131.

petitioner guilty, and sentenced him to seventy-five years in prison.[2]

The victim, Shemeir Winn, testified that in the afternoon of March 11, 2003, an accomplice forced her into the backseat of petitioner's car at gunpoint.[3]  After driving to an unknown destination, the car stopped, the accomplice got out of the car, forced Winn out of the backseat and into frontseat of petitioner's car at gunpoint, and then left the scene, leaving her alone with petitioner.[4]  During her move from the backseat to the frontseat of petitioner's car Winn saw petitioner's face.[5]  Winn also saw a silver and black handgun pointed at her head.[6]

Winn testified that she was forced at gunpoint to lay her head in petitioner's lap while he drove to a different location.[7]  Winn testified that while her head was still on petitioner's lap, he tried to make small talk with her.  Petitioner asked Winn if she had any kids, and stated that he had kids, but the mother would not permit him to see them.[8]  Later testimony from a defense witness

---

[2]Id., Judgment on Plea of Not Guilty Before Court p. 135.

[3]Reporter's Record, Docket Entry No. 9, Vol. 4 pp. 99, 108-10, 112.

[4]Id. at p. 118.

[5]Id.

[6]Id. at pp. 118, 123.

[7]Id. at p. 124.

[8]Id. at p. 126.

confirmed that petitioner has a child, but that the child's mother would not permit petitioner to see the child.[9]

Winn testified that after driving for what seemed like a few blocks, petitioner stopped the car.  He then demanded that Winn unbutton her pants.  When Winn failed to do so quickly enough, petitioner forced them down.  Petitioner then retrieved a can of shaving cream and a straight razor from the car's glove box, and demanded that Winn shave off her pubic hair.[10]  Winn was hysterical and struggled to complete the task; so petitioner seized control of the straight razor and completed it for her, inflicting several lacerations to Winn's labia.[11]  Petitioner also took Winn's personal identification, her social security card, her jacket, a ring and a few other items.  He also took two twenty dollar bills that he unexpectedly found in Winn's bra.[12]

At some point during the encounter, petitioner exposed his penis and demanded that Winn perform oral sex on him.[13]  When Winn failed to immediately comply with the demand, petitioner grabbed the back of Winn's head and forced her head down toward his penis.[14]

---

[9]Id., Vol. 5 p. 31.

[10]Id., Vol. 4 pp. 128, 131-32.

[11]Id. at p. 133.

[12]Id. at pp. 134-36.

[13]Id. at p. 139.

[14]Id.

When Winn failed to perform the act to his liking, petitioner made threats on her life, exclaiming that if he did not ejaculate he would kill her.[15]  Winn testified that petitioner did eventually ejaculate in her mouth and that he used her jacket to wipe himself off.[16]

Winn also testified that during the entire assault petitioner brandished either the silver and black handgun or a brown and black pistol, which petitioner had produced from beneath his seat and loaded in front of her.[17]  Petitioner made repeated threats on Winn's life and Winn was in constant fear for her life.[18] Petitioner also struck Winn in the head with a gun when he caught her looking at his face and threatened to kill her if she looked at him again.[19]  Winn testified that despite petitioner's threats, she stole several glances at petitioner's face.[20]

After robbing her and forcing her to perform oral sex on him, petitioner ordered Winn out of the car, not even giving her a chance to pull up her pants, and told her to run into a nearby

---

[15]<u>Id.</u> at pp. 141-42.

[16]<u>Id.</u> at p. 143.

[17]<u>Id.</u> at pp. 129-130.

[18]<u>Id.</u> at pp. 127, 133-34, 137, 145, 150.

[19]<u>Id.</u> at p. 145.

[20]<u>Id.</u> at pp. 144, 150.

field and not to look back or he would kill her.[21]  Winn testified that she obeyed petitioner, exited the car half-naked, and was forced to crawl into the nearby field.[22]  Winn waited in the field until she was satisfied that petitioner was gone.  She then ran to a nearby home and called the police.[23]

Officer Crawford responded to the call.[24]  Winn gave Officer Crawford petitioner's description, including a description of petitioner's "grill," a type of jewelry worn over the teeth.  Winn described the grill as being on both the top and bottom teeth, one with red coloring in it, and one with blue coloring.[25]

Roughly three weeks later, on April 1, 2003, Houston Police Officer Kutach pulled petitioner over for lacking a front license plate on his car.[26]  Petitioner attempted to flee but was quickly apprehended.  While attempting to flee petitioner dropped a .38 caliber semi-automatic handgun, which Officer Kutach seized and later offered into evidence.[27]  Winn testified that the handgun

---

[21]Id. at p. 145.

[22]Id. at pp. 148-152.

[23]Id. at pp. 153, 157-58.

[24]Id. at pp. 23-24.

[25]Id. at p. 147.

[26]Id., Vol. 3 p. 9.

[27]Id. at pp. 16-18

Officer Kutach seized was the silver and black gun that petitioner brandished during the assault.[28]

Officer Kutach arrested petitioner for evading arrest. While taking petitioner to jail, Officer Kutach noticed a distinctive blue grill on petitioner's teeth.[29] Upon seeing petitioner's grill, Officer Kutach contacted Officer Crawford.[30]

Sergeant Morgan of the Houston Police Department testified that he contacted Officer Kutach and his partner regarding their encounter with petitioner.[31] After discussing petitioner's appearance with the officers, and confirming their belief that petitioner might be a suspect in the Winn assault, Sergeant Morgan met with petitioner.[32] He asked petitioner to be part of a live line-up, but petitioner refused.[33] Consequently, Sergeant Morgan instead took petitioner's picture and put together a photo array.[34] During his encounter with petitioner, Sergeant Morgan observed a

---

[28]Id., Vol. 4 pp. 123-24.

[29]Id., Vol. 3 pp. 19-20

[30]Id. at pp. 20-21.

[31]Id. at pp. 50-51.

[32]Id. at p. 51.

[33]Id. at pp. 51-52.

[34]Id. at pp. 55-56.

blue grill in petitioner's mouth.  However, petitioner's grill was not showing in the picture that Sergeant Morgan took.[35]

Sergeant Morgan testified that upon presenting the photo array to Winn, she took only a few seconds to identify petitioner as the man who assaulted her.[36]  Winn's pretrial identification of petitioner occurred almost one month after the assault.[37]

At trial Winn identified petitioner unequivocally as the man who assaulted her.[38]  She was also able to point out changes in petitioner's appearance from the time of the assault.[39]  These same changes in petitioner's appearance were unknowingly confirmed by defense witnesses who either knew him,[40] or had seen him many times.[41]

Petitioner's counsel called two defense witnesses in attempt to establish an alibi for petitioner.  Petitioner called Marilyn Ferrari, a school teacher, to establish that petitioner was at Wesley Elementary School picking up his girlfriend's daughter from

---

[35]_Id._ at p. 54.

[36]_Id._ at pp. 57-58.

[37]_See_ _id._ at p. 59.

[38]_Id._ at pp. 145-46.

[39]_Id._ at p. 147 (pointing out that petitioner was a lot thinner at the time of the assault).

[40]_Id._, Vol. 5 p. 27:23 (testimony of Michelle Randall, petitioner's former girlfriend).

[41]_Id._ at pp. 7-8 (pointing out his face looked "fuller").

school at the time of the assault. Ferrari could not confirm that alibi, however.[42]  The defense also called petitioner's girlfriend at the time of the assault, Michelle Randall, to establish that petitioner was picking up her child from school when Winn's assault occurred.[43]  But Randall had no recollection of whether petitioner was picking her child up from school at time and date of the assault on Winn.[44]

The trial judge found petitioner guilty of aggravated sexual assault.[45]  Petitioner appealed his conviction to the Texas Court of Appeals.[46]  On appeal he asserted that the evidence against him at trial was legally and factually insufficient.[47]  The Texas Court of Appeals rejected petitioner's claims and affirmed petitioner's conviction.[48]

Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals.  The only issue petitioner sought for review was whether the Texas Court of Appeals mistakenly

---

[42]Id.

[43]Id. at pp. 13-14.

[44]Id. at p. 32:12-19.

[45]See Ex parte Williams, No. 67, 602-01, General Orders of the Court pp. 133-34.

[46]Id., Williams v. State, No. 01-04-182-CR, p. 119.

[47]Id. at pp. 123-29.

[48]Id.

assumed that petitioner made a mistake in his brief.[49]   The Texas Court of Criminal Appeals denied petitioner's petition for discretionary review on October 26, 2005.[50]

Petitioner then filed an application for a state writ of habeas corpus.[51]   In the application he raised four main claims: actual innocence, ineffective assistance of counsel, denial of compulsory process, and denial of due process for the admission of unproven extraneous offense evidence.[52]   The Texas Court of Criminal Appeals denied petitioner's state application without written order based on the findings of the trial court.[53]

Petitioner filed a Petition for a Writ of Habeas Corpus in this court on August 30, 2007.   He raises the same claims he had already raised in his state application.[54]

---

[49]State Court Records, Docket Entry No. 9, Appellants [sic] Petition for Discretionary Review pp. i, 2.

[50]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 3.

[51]Id.

[52]Id.

[53]Ex parte Williams, No. 67, 602-01, Application for 11.07 Writ of Habeas Corpus: Action Taken, p. i.

[54]See Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 3, 7-8; see also Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 8, p. 4 (conceding that petitioner exhausted the claims raised in his federal petition).

## II.  Standards of Review

Respondent contends that he is entitled to a judgment because, based on the state court records, petitioner has failed to meet his burden under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000); but only to the extent that the rule is consistent with the AEDPA, see Rule 11 of Rules Governing § 2254 Cases.  Under Rule 56 summary judgment is appropriate only if the pleadings and parties' submissions demonstrate that there is no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In habeas cases, however, the court cannot construe all facts in the light most favorable to the nonmoving party.  See Woods v. Cockrell, 307 F.3d 353, 356-57 (5th Cir. 2002).  Instead, the AEDPA requires the court to presume as true all facts found by the state court until the petitioner provides clear and convincing evidence to rebut that presumption. Id. (citations omitted); 28 U.S.C. § 2254(e)(1).

Petitioner has the burden of establishing that he is entitled to relief.  Orman v. Cain, 228 F.3d 616, 619 (5th Cir. 2000). Because petitioner filed his habeas petition after April 24, 1996, the AEDPA applies.  Lindh v. Murphy, 117 S. Ct. 2059 (1997).  To meet his burden under the AEDPA, petitioner must establish that the

state courts' adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).   To determine whether petitioner has made this showing, the court must examine petitioner's underlying claims.   See <u>Del Toro v. Quarterman</u>, 498 F.3d 486, 490-91 (5th Cir. 2007) (affirming denial of a petitioner's habeas petition because petitioner could not establish his claim on the merits); <u>Neal v. Puckett</u>, 286 F.3d 230, 236-47 (5th Cir. 2002) (evaluating the merits of petitioner's claim before concluding that although incorrect, the state court's decision was not an unreasonable application of federal law).   However, before the court may reach the merits of petitioner's claims, it must be sure that those claims are not procedurally defaulted.   See <u>Pickney v. Cain</u>, 337 F.3d 542, 545 (5th Cir. 2003).

### III. <u>Procedural Default</u>

Under the doctrine of procedural default, a federal court is barred from reviewing a petitioner's habeas claim "[i]f a state court clearly and expressly base[d] its dismissal of a prisoner's claim on a state procedural rule, and that procedure provide[d] an independent and adequate ground for the dismissal[.]" <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 2003).   The procedural bar may be overcome, however, if petitioner can prove "'cause for the procedural default and actual prejudice . . . .'" <u>Pickney</u>, 337

-11-

F.3d at 545 (quoting <u>Smith v. Johnson</u>, 216 F.3d 521, 524 (5th Cir. 2000)).

In his petition petitioner alleges that the state trial court violated petitioner's due process rights by admitting evidence of extraneous offenses.  The state habeas court found that this claim was procedurally barred under Texas law because petitioner failed to raise the claim on direct appeal.[55]  A state habeas court's dismissal of a claim for failure to raise the claim on direct appeal is an adequate and independent ground that bars federal habeas review.  <u>Scheanette v. Quarterman</u>, 482 F.3d 815, 827 (5th Cir. 2007).  Consequently, since petitioner has made no showing of cause or prejudice, the court cannot review petitioner's due process claim.

Petitioner's insufficiency-of-the-evidence claim also falls under the procedural default rule.  The state habeas court rejected petitioner's claim of insufficiency of the evidence on the grounds that such claims are not cognizable on collateral review.[56]  The Texas Court of Criminal Appeals has long "held that a habeas corpus proceeding may not be used to collaterally attack the sufficiency of the evidence to support a conviction."  <u>Ex parte McWilliams</u>, 634 S.W.2d 815, 818 (Tex. Crim. App. 1980).  The Fifth Circuit has

---

[55]<u>Ex parte Williams</u>, No. 67, 602-01, Respondent's Findings of Fact (signed by the presiding judge), p. 111 ¶ 5.

[56]<u>Id.</u> ¶ 6.

recognized this rule as an adequate state ground that bars federal habeas review.  See West v. Johnson, 92 F.3d 1385, 1398 n.18 (5th Cir.1996).   Therefore, the court is barred from reviewing the claim.

### IV. Petitioner's Remaining Claims

Petitioner's remaining claims consist of a claim of actual innocence, ineffective assistance of counsel, and denial of compulsory process.  Each claim will be discussed in turn.

### A.  Actual Innocence

Petitioner argues that he is entitled to relief because a "newly discovered" alibi witness, Professor Azucena Endrinal, can prove that petitioner is actually innocent.[57]  Though exactly what petitioner means by this claim is unclear.  Based on the claim stated in the petition, petitioner could be asserting an independent claim of actual innocence; that is, that he is entitled to relief because new evidence proves he is not guilty.  However, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."   Herrera v. Collins,

---

[57]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7; Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, p. 5.

113 S. Ct. 853, 860 (1992); <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1074-75 (5th Cir. 1998).

Apparently recognizing this flaw in his claim, petitioner argues that his claim of actual innocence is based on <u>Schlup v. Delo</u>, 115 S. Ct. 851 (1995).[58]  To the extent petitioner relies on <u>Schlup</u> to establish actual innocence as a basis for habeas relief, his reliance is misplaced.  The allegation of actual innocence in <u>Schlup</u> was not used as an independent basis for habeas relief, but merely "'a gateway through which [the] habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  <u>Id.</u> at 861 (quoting <u>Herrera</u>, 113 S. Ct. at 862).  In other words, "actual innocence" is another defense to the application of the procedural default doctrine.  <u>See, e.g.</u>, <u>Lucas</u>, 132 F.3d at 1076-77.

Even though petitioner has cited <u>Schlup</u>, it is clear that overcoming a procedural bar is not petitioner's intent in arguing his innocence.  In his submissions to this court, petitioner has repeatedly argued that the court should "acquit him of the case at bar and find that no rational trier of fact would have found him guilty . . . in light of the new evidence."[59]  This is a claim for

---

[58]<u>See</u> Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, pp. 4-5; Petitioner's Rebuttal to Respondent's Motion for Summary Judgment, Docket Entry No. 10, pp. 3-4.

[59]Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, p. 5.

actual innocence and makes no reference to overcoming any procedural bar.

Petitioner did raise a Brady claim in connection with his actual innocence claim, which, if raised as a separate ground for relief, would be procedurally barred under the Texas abuse of the writ doctrine. See Finley v. Johnson, 243 F.3d 215, 219-20 (5th Cir. 2001). However, rather than raising a Brady claim as another ground for relief, petitioner appears to have raised the claim out of an erroneous understanding of Schlup. In Schlup, the petitioner raised two procedurally defaulted claims: a Brady claim and a claim of ineffective assistance. 115 S. Ct. at 860-61. In defense of his actual innocence claim, petitioner raised the same two claims. However, petitioner's ineffective-assistance-of-counsel claim is not procedurally barred. See infra Part IV.B. Accordingly, the court concludes that rather than attempting to avoid a procedural bar, petitioner misinterpreted Schlup to require that he prove ineffective assistance of counsel and a Brady violation in order to state a claim of actual innocence, the kind rejected in Herrera.[60] This is, of course, not the law. Because petitioner has asserted

---

[60] See Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, pp. 4-5; Petitioner's Rebuttal to Respondent's Motion for Summary Judgment, Docket Entry No. 10, pp. 3-4.

-15-

a claim of actual innocence, the claim must be dismissed under
Herrera.[61]

## B.  Ineffective Assistance of Counsel

        Petitioner claims that the state court's conclusion that his
trial or appellate counsel were not constitutionally ineffective
was an unreasonable application of federal law.  To establish that
his counsel was ineffective petitioner "must demonstrate both
deficient performance by his counsel and prejudice resulting from
that deficiency."  Emery v. Johnson, 139 F.3d 191, 196 (5th Cir.
1997).   To establish deficient performance "petitioner must
demonstrate that [his] counsel's representation fell below an
objective standard of reasonableness."  Miller v. Dretke, 420 F.3d
356, 361 (5th Cir. 2005) (internal quotations omitted).   When
examining counsel's performance, the court "must be highly
deferential, and . . . must presume that counsel's conduct falls
within the wide range of reasonable professional assistance."  Id.
To prove prejudice, petitioner "must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Strickland v. Washington, 104 S. Ct. 2052, 2068 (1984).  A claim

---

        [61] Moreover, for the reasons discussed infra at pages 27 and
28, were the court to address the merits of the actual innocense
claim, the court would conclude that there was ample evidence to
support the Court of Appeals's decision that the evidence was both
legally and factually sufficient to support petitioner's
conviction.

for ineffective assistance of counsel can be disposed of "for either reasonable performance of counsel or lack of prejudice, without addressing the other." <u>Murray v. Maggio</u>, 736 F.2d 279, 282 (5th Cir. 1984). Petitioner asserts that his trial counsel was ineffective because he (1) failed to investigate petitioner's case and interview alibi witnesses, (2) elicited prejudicial testimony during trial, (3) failed to object to the admission of prejudicial evidence and other trial errors, and (4) failed to object to the admission of extraneous offense evidence during the punishment phase.[62] Petitioner also alleges that his appellate counsel was ineffective.[63]

1.   <u>Failure to Investigate and Interview Alibi Witnesses</u>

Petitioner alleges that his counsel's failure to investigate and interview Professor Endrinal and call her as an alibi witness at trial, constituted ineffective assistance because the professor's testimony would have proven petitioner innocent.[64] Professor Endrinal's affidavit to the state court states that on the date of the Winn assault (March 11th, 2003), "around 4:00

_____

[62]<u>Id.</u> at p. 7.

[63]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 8.

[64]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7; Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, pp. 6-9.

p.m.," Professor Endrinal saw petitioner with his girlfriend, Michelle Randall, at Houston Community College and stopped to talk with them.[65] Had the judge heard this testimony, petitioner claims, he would not have been convicted.

As part of petitioner's state habeas case, petitioner's trial counsel summarized his investigation of petitioner's case in an affidavit,[66] which the state habeas court accepted in its entirety as true and credible.[67] This court must also accept the trial counsel's affidavit as true because petitioner has presented no evidence, let alone clear and convincing evidence, that would contradict the state habeas court's factual findings. See 28 U.S.C. § 2254(e)(1).

In his affidavit, petitioner's counsel stated that in April of 2003 he was appointed to represent petitioner in two sexual assault cases, the White case and the Winn case.[68] To assist in gathering defense witnesses and evidence for the two assault cases counsel hired an independent investigator.

---

[65]Ex parte Williams, No. 67, 602-01, Affidavit of Professor Azucena M. Endrinal pp. 33-34; Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, Exhibit A.

[66]Ex parte Williams, No. 67, 602-01, Affidavit of Ronald N. Hayes p. 98.

[67]Id., Respondent's Proposed Findings of Fact and Conclusions of Law (signed by presiding judge) p. 110.

[68]Id.

-18-

In September of 2003 petitioner notified counsel of an alibi in the White assault: that petitioner was in a college class at the time of the assault.  Petitioner gave counsel the name of the professor that petitioner claimed could verify petitioner's attendance in class at the time the assault occurred.[69]  However, after counsel subpoenaed the professor, counsel discovered that the professor could not verify petitioner's alibi.  Consequently, counsel excused the professor as a witness.[70]

In a letter that counsel received November 1, 2003, petitioner claimed that attendance records from the Houston Community College from the months of March and April of 2003 would establish that he was in class at the time of the Winn assault.  Counsel subpoenaed the attendance records.[71]  The investigator reviewed them, but the records did not confirm petitioner's alibi.[72]

A few months later petitioner wrote counsel a letter asking him to subpoena Randall, and a Mr. Litchman or Mrs. Endrinal.  Petitioner also requested that counsel subpoena Ferrari, the grade-school teacher who taught Randall's child.  Petitioner did not specify why he sought subpoenas for Mr. Litchman or Mrs. Endrinal.  The only details that petitioner provided counsel concerning Mr.

---

[69]Id. at pp. 99-100.

[70]Id. at p. 100.

[71]See id.; see also id., Application for Subpoena p. 40.

[72]Id., Hayes Aff. p. 100.

Litchman and Mrs. Endrinal was that they were teachers at the Northline Mall. Petitioner did, however, provide details about why he needed Randall's and Ferrari's testimony. Petitioner claimed that Randall and Ferrari could confirm that petitioner was picking up Randall's child from school at the time of the Winn assault. Counsel subpoenaed Randall and Ferrari but did not subpoena the two Northline Mall teachers.[73]

Accordingly, based on the state habeas court's findings, the court concludes that counsel's failure to interview and call Professor Endrinal as a witness was not deficient. When determining whether counsel's conduct was deficient, the court must "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." Strickland, 104 S. Ct. at 2065. Defense counsel's performance is not deficient merely because counsel failed to "interview every claimed eyewitness, alibi witness, and/or assertedly exculpating criminal co-participant." Bryant v. Scott, 28 F.3d 1411, 1419 n.13 (5th Cir. 1994). "[C]ounsel does not have unlimited time[,]" thus "counsel's judgment in the effective use of time is generally entitled to deference." Id. Thus, counsel's performance is not deficient when the "results of interviewing certain witnesses or other investigation . . . indicate that further pursuit of additional asserted witnesses will likely be a waste of time." Id.

---

[73]Id. at pp. 100-01.

-20-

Moreover, "counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." <u>Lackey v. Johnson</u>, 116 F.3d 149, 152 (5th cir. 1997).

Based on what petitioner's counsel knew at the time of trial, counsel acted reasonably in not interviewing or subpoenaing Professor Endrinal. This is not a case where, despite knowing of a colorable alibi, counsel "did essentially no pre-trial investigation." <u>Bryant</u>, 28 F.3d at 1419 n.13. On the contrary, petitioner's counsel conducted a diligent inquiry into potential alibis and witnesses, and subpoenaed those witnesses that petitioner indicated were potentially exculpatory.[74]

Twice petitioner claimed that school records or personnel would provide him with an alibi for either the White or Winn assault. Twice petitioner's counsel expended time and resources investigating petitioner's purported alibis to no avail. It was against this factual backdrop that petitioner asked his counsel, just a few weeks before trial, to expend more time and resources and subpoena Professor Endrinal, but without any indication as to what evidence Professor Endrinal could provide.

Counsel did investigate and subpoena two of petitioner's purported alibi witnesses in the Winn case, Randall and Ferrari. Both witnesses testified at trial.[75] Counsel's strategic choice to

---

[74]<u>Ex parte Williams</u>, No. 67, 602-01, Hayes Aff. pp. 100-01.

[75]Reporter's Record, Docket Entry No. 9, Vol. 5 pp. 5, 8.

-21-

ignore an alibi that experience had taught him was baseless, and to pursue only those witnesses that petitioner affirmatively identified as exculpatory, was not deficient.[76]

2.   <u>Eliciting Prejudicial Evidence at Trial</u>

Petitioner complains that his counsel's conduct was deficient when counsel elicited testimony concerning the marijuana that officers found in petitioner's car after he was arrested.  At trial petitioner's counsel asked Officer Kutach on cross examination if he found marijuana in petitioner's car, to which the officer responded that he had.  Counsel then asked Officer Kutach whether the district attorney had approved marijuana charges against petitioner, to which the officer admitted that no charges had been filed.[77]

---

[76]The court further notes that petitioner's counsel did, in fact, call a witness that petitioner admits was present at the alleged meeting between petitioner and Professor Endrinal: "Professor Azucena Endrinal . . . spoke with me and observed me with my girlfriend, Michelle Randall[.]"  Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, p. 7; <u>see also</u> <u>Ex parte Williams</u>, No. 67,602-01, Endrinal Aff. pp. 33-34 ("I saw Charles with his girlfriend.  I stopped and commented on how pretty she was . . . then we all laughed.").  Randall testified at trial, but mentioned nothing about meeting Professor Endrinal or even to being present at the college during the time of the assault.  Petitioner has not explained why Randall did not so testify.  Moreover, there is no record, and petitioner makes no claim, that petitioner ever told his counsel that Randall could vouch for petitioner's "newly discovered" alibi even though she was present at the purported meeting.

[77]Reporter's Record, Docket Entry No. 9, Vol. 3 pp. 22-23.

This exchange between counsel and Officer Kutach is insufficient to overcome the presumption that counsel's actions were strategic and reasonable. See Del Toro, 498 F.3d at 491. Indeed, counsel could have had several sound reasons for eliciting this testimony about the marijuana found in petitioner's car. One reason could have been to support a theory that other people had access to the car and left the marijuana in the car, and thus, could have abducted and assaulted Winn. Another reason would be to show the court that the reason petitioner fled from police was not because he was afraid of being arrested for the sexual assault, but because he knew he had drugs in the car.

Petitioner also alleges that his counsel was deficient for questioning the officer who searched petitioner's vehicle concerning the windbreakers, or jackets, he found inside. Winn testified that at the time of her abduction and assault she was wearing a blue and white windbreaker, which she was forced to leave behind after the assault.[78] When petitioner's counsel asked the officer that searched petitioner's car about the windbreakers found in the car, the officer testified to finding a red, white and blue windbreaker, and a yellow and black windbreaker.[79] Counsel's likely intent in this line of questioning was to point out that while

_____

[78]Reporter's Record, Docket Entry No. 9, Vol. 4 p. 102:22-25.

[79]Id. at p. 42.

-23-

several windbreakers may have been found in petitioner's car, the victim's blue and white windbreaker was not among them.

Finally, petitioner contends that his counsel was deficient because counsel insisted several times that petitioner show his "grill" to several witnesses.  The court disagrees.  Identity played a central role in petitioner's trial.  The perpetrator of the assault on Winn wore a distinctive blue grill.[80]  Moreover, there was some doubt concerning the placement of the perpetrator's grill.  Winn testified at trial that the perpetrator wore two grills in his mouth, one red and one blue.[81]  At trial petitioner appeared with, and displayed, only one grill in his mouth, which was gold and blue.[82]  The objective of these several displays was simple and clearly strategic: to impeach the credibility of Winn's identification of petitioner as her attacker.[83]

   3.   <u>Failure to Object to the Admissibility of the Victim's Pretrial Identification of Petitioner and to the Improper Bolstering of the Victim's Credibility</u>

Petitioner alleges that his counsel was defective for failing to object to the admissibility of Winn's pretrial identification, and for failing to object to the improper bolstering of Winn's

---

[80]<u>Id.</u> at pp. 29, 147.

[81]<u>Id.</u> at p. 147.

[82]<u>See, e.g.</u>, <u>id.</u> at pp. 63-64.

[83]<u>See</u> <u>id.</u> at pp. 181-82.

testimony by the prosecutor. Neither contention has merit, however, because petitioner has not proved that counsel's purported failures were prejudicial.

To prove prejudice in this context, petitioner must prove that there existed a reasonable probability that had his counsel objected, the result of petitioner's trial would have been different. See Strickland, 104 S. Ct. at 2068. Respondent contends that petitioner's burden is especially high in this case because petitioner's trial was a bench trial not a jury trial.

Generally, when reviewing a judge's decision in a bench trial, a reviewing court presumes that "[t]he prejudicial impact of erroneously admitted evidence . . . [is] substantially less than it might have been in a jury trial." United States v. Cardenas, 9 F.3d. 1139, 1156 (5th Cir. 1993) (internal quotations omitted). Presumed to know the law, "a judge, sitting as a trier of fact, is [also] presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." Id. (internal quotations omitted). Thus, "[a]ny error the judge makes in admitting evidence is . . . harmless if there exists other admissible evidence sufficient to support the conviction." Id.

Respondent urges the court to directly apply these presumptions to petitioner's claim that he was prejudiced by his counsel's failure to object to the admission of Winn's pretrial

-25-

identification into evidence, and to the prosecution's improper bolstering of Winn's credibility.  Those standards, however, apply to a claim of trial court error; petitioner's claim concerns his counsel's error.  Thus, the presumption that a trial judge, sitting as trier of fact, rested his or her decision only on admissible evidence cannot apply directly to claims of ineffective assistance of counsel.

Nonetheless, the court is persuaded that the presumptions that attach to a judge's decision in a bench trial should apply indirectly.  As noted, to prove that he was prejudiced by his counsel's failure to object, petitioner must prove that there is a reasonable probability that but for his counsel's error the result of his trial would have been different.  Strickland, 104 S. Ct. at 2068.  In other words, petitioner must prove that, but for counsel's deficiencies, there is a reasonable probability that the trier of fact would have reached a different decision.  Since the trier of fact in petitioner's trial was a judge, petitioner must establish a reasonable probability that, but for his counsel's failure to object, the judge would have reached a different decision.

Proving that the judge would have reached a different decision implicates the presumptions that generally attach to a judge's decision in a bench trial.  Therefore, the court concludes that to prove that he was prejudiced by counsel's failure to object to the

admissibility of inadmissible evidence, petitioner must overcome the presumption that a state trial judge, as the trier of fact, "rested his verdict only on the admissible evidence before him and . . . disregarded that which is inadmissible." Cardenas, 9 F.3d. at 1156.   Thus, in this context, the court will presume that counsel's deficiencies are not prejudicial so long as "there exists other admissible evidence sufficient to support the conviction." Id.; see also Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (holding that a habeas petitioner suffered no prejudice from counsel's failure to impeach a rape victim's testimony with her prior inconsistent statements during a bench trial because the state judge found other admissible evidence upon which to base the petitioner's conviction).

Accordingly, even assuming that the failure of petitioner's counsel to object to the admission of the pretrial identification or to the prosecution's improper bolstering was deficient, the court finds that petitioner was not prejudiced by counsel's alleged deficiencies because there was ample admissible evidence to support petitioner's conviction.   Winn identified the petitioner at trial as the assailant without equivocation.[84]   She identified that the handgun officers recovered from petitioner's car was the gun that petitioner had brandished during the assault.[85]   She gave vivid and

---

[84]Id. at pp. 145-46.

[85]Id. at pp. 123-24.

descriptive testimony of how petitioner assaulted and threatened her.  And it was Winn's description of petitioner and his grill that led officers to connect petitioner to the assault after his arrest on an unrelated charge.  Moreover, Randall, a defense witness, corroborated testimony that Winn gave about what petitioner told her about his inability to see his child.[86]  This evidence was admissible, and was sufficient to support petitioner's conviction.  Therefore, the court finds that petitioner suffered no prejudice from counsel's failure to object to the admission of Winn's pre-trial identification or the prosecution's bolstering.[87]

     4.   <u>Failure to Object to the Admission of Extraneous Offense Evidence During the Punishment Phase</u>.

Petitioner claims that his counsel was ineffective for failing to object to the admission of Quanesia White's testimony during the punishment phase of his trial.[88]  However, the court finds that counsel's decision not to object to the admission of White's testimony was not deficient.

---

[86]<u>Id.</u> at p. 126; Vol. 5 p. 31.

[87]Since petitioner was tried to the court without a jury petitioner's counsel was not ineffective for failing to request a jury charge.  <u>See</u> Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7.

[88]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 8; Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, pp. 11-12.

During the punishment phase of petitioner's trial, White testified that on April 1, 2003, petitioner abducted her at gunpoint, forced her to perform oral sex on him at gunpoint at several different locations, and then raped her at gunpoint.[89] White also testified that during her ordeal petitioner hit her with the gun,[90] and repeatedly threatened to kill her.[91] Petitioner's counsel did not object to the admission of this testimony.

Under Texas law the state may introduce during the punishment phase any "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim Proc. Ann. art. 37.07, § 3.  Accordingly, White's testimony concerning petitioner's "bad acts" against White was admissible for purposes of punishment.  Thus, there was nothing unreasonable per se about trial counsel's failure to object to the admission of this testimony.

That petitioner's counsel could possibly have found some reason to object to the testimony does not make his decision not to object unreasonable for purposes of the ineffective assistance of

---

[89]Reporter's Record, Docket Entry No. 9, Vol. 5 pp. 88-112.

[90]Id. at p. 104.

[91]Id. at pp. 96, 111.

counsel. To prove counsel's conduct was deficient, petitioner must show that "[s]olid, meritorious arguments based on directly controlling precedent" imposed upon his counsel a duty to object. United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003). Petitioner has not presented any clearly applicable precedents that would impose such a duty, and this court has not found any. Therefore, counsel's decision not to object to the admission of White's testimony during the punishment phase was not deficient.

     5.   Ineffective Assistance of Appellate Counsel.

Petitioner's contention that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal to the Texas Court of Appeals is meritless. The court has already concluded that there is no legal or factual basis for his claim for ineffective assistance of trial counsel; thus, petitioner's claim that appellate counsel was ineffective for failing to raise a baseless claim is equally baseless.

**C.  Denial of Compulsory Process**

Petitioner contends that he was denied due process when the trial court failed to issue a subpoena for Professor Endrinal.[92]

---

[92]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7; Petitioner's Memorandum of Law in Support Writ [sic] of Habeas Corpus, Docket Entry No. 2, pp. 13-14.

To prove a claim of the denial of compulsory process on habeas, petitioner must show (1) that he requested a subpoena from the state trial court, <u>Beach v. Blackburn</u>, 631 F.2d 1168, 1171 (5th Cir. 1980); and (2) that he demonstrated to the trial court the need for the witness's testimony, <u>Janecka v. Cockrell</u>, 301 F.3d 316, 326-27 (5th Cir. 2002).  Petitioner has made neither showing.

In its own examination of the record, the court has not found where petitioner ever requested a subpoena from the trial court. Although there is a copy of an unsigned writ of attachment or bench warrant for a "Mrs. Endrinal" in the record,[93] the writ appears as "Exhibit E" to petitioner's state application for habeas corpus. There is no indication in the record that petitioner's Exhibit E was ever presented to the state trial judge.  Moreover, there is nothing in the record to indicate that petitioner ever explained to the court, or even his counsel, why Professor Endrinal's testimony was needed.   Thus, the court rejects petitioner's claim as conclusory.   <u>See</u> <u>Ross v. Estelle</u>, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that conclusory allegations are insufficient to raise a constitutional claim in federal habeas proceedings).

---

[93]<u>See</u> <u>Ex parte Williams</u>, No. 67, 602-01, Petitioner's , Exhibit E, p. 42.

### V.   <u>Conclusion and Order</u>

Given that petitioner has failed to present any meritorious claims, the court cannot find that the state court's application of clearly established federal law was unreasonable.  Therefore, based on the foregoing, respondent's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**, and petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this 23rd day of November, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE